[No. 2234.]

## THE DENVER LIFE INSURANCE COMPANY v. CRANE.

1. **Life Insurance—Forfeiture of Policy—Application for Reinstatement—Waiver.**

Where the agent of an insurance company called upon a policy holder to collect the premium the day it fell due and the insured said that he had concluded to let the policy lapse on account of inability to pay, but asked the agent to call again about a month later, which the agent did, and informed the insured that his policy had lapsed and that he would have to make an application for reinstatement, which would have to be acted upon by the company, and the insured said he understood that and signed an application for reinstatement filled out by the agent, the insured thereby waived the right to. claim that his policy had not lapsed because of failure by the company to mail him notice that payment of the premium would be required on the day it became due, or because of the acceptance of past premiums after they became due.

2. **Life Insurance—Vested Interest in Beneficiary—Waiver.**

Where a policy of insurance is issued on the life of a person for the benefit of another under such circumstances as to vest an interest in the. beneficiary, that interest cannot be affected by any subsequent acts or declarations of the person whose life is insured, but if by the contract no vested interest passed to the beneficiary, and full control and dominion over the policy remained in the insured, subsequent acts and declarations of the insured are binding on the beneficiary, and the insured may waive the requirement of the policy that the insurer shall give notice of the maturity of a premium before declaring a forfeiture for nonpayment thereof.

3. **Life Insurance—Beneficiaries—Vested Interest.**

Where a policy of life insurance provided that the insured might, without the beneficiary's consent, diminish the amount of the insurance or appoint another beneficiary, the beneficiary had no vested interest, but only an expectancy, which might at any time be defeated by the act of the insured.

4. **Life Insurance—Forfeiture—Reinstatement — Medical Examination—Waiver.**

Where a policy of life insurance provided that in case of forfeiture for default in the payment of a premium the insured might be reinstated upon proof of good health satisfactory to the board of directors of insurer, without specifying what proof should be required, in case of forfeiture the company might waive

a medical examination and accept the reinstatement upon the statement of the insured; and where such statement and application for reinstatement was made and accompanied by the amount of premium due, and the premium was accepted and the insured was notified of the maturity of a subsequent payment of premium, such notice of the maturity of the subsequent payment was evidence tending to prove that the insurer had waived a medical examination and accepted the statement of the insured as satisfactory proof of good health.

5.   Same.

Where an insurance company waives a medical examination upon an application for reinstatement and reinstates the insured upon his own statement, it cannot thereafter revoke its waiver and require a medical examination.

6.   Life Insurance—Application—False Representation—Burden of Proof.

. In an action upon a policy of life insurance, where the complaint did not mention the application, but the application was set out in the answer with an allegation of false representation as to the condition of applicant's health, the burden of proof is on the defendant to show the falsity of the representation.

7.   Life Insurance—Reinstatement—Proof of Health—Waiver— Instructions.

In an action upon a policy of life insurance, where there was evidence tending to prove that upon an application by the insured for reinstatement from a forfeiture for nonpayment of premium, the defendant had waived a medical examination and reinstated the insured on his own statement of health, an instruction that it was the duty of the insured to furnish proof of good health satisfactory to and approved by the defendant's board of directors before he could be reinstated was properly refused.

*Appeal from the District Court of Arapahoe County.*

Messrs. RISING & MARSHALL, Mr. J. C. HELM and Mr. E. E. EDMONDS, for appellant.

Mr. J. WARNER MILLS and Mr. JOHN H. GABRIEL, for appellee.

THOMSON, P. J.

Suit by the appellee upon a policy of insurance issued by the appellant, on the life of her husband,

Richard M. Crane.   Judgment in her favor, and appeal by the defendant.

The complaint alleged the execution and delivery of the policy, the payment by the insured of the premiums required by the policy, his death, the notice of his death required by the policy, and the defendant's refusal to pay the amount of the insurance.   The answer admitted the execution of the policy, but averred the failure by the insured to pay a premium due on the 11th day of May, 1898; the consequent lapse of the policy; his application for reinstatement on the 22nd day of June, 1898; his failure of compliance with a provision of the policy requiring him in such case to furnish proof of good health satisfactory to the defendant company's board of directors; and the presence in his system, at the time of the application, of a disease which subsequently caused his death.   The replication averred the payment, on June 22, 1898, of the quarterly premium due May 11, 1898; the acceptance of the money by the defendant; its notice to Crane, given on the 11th day of July, 1898, of the premium to become due on the 11th day of August, 1898; the acceptance by the company of all previous premiums on the policy long after they had become due; the want of notice to the insured that the premium of May 11 would be required on that day; and a want of knowledge by the plaintiff of the alleged application for a reinstatement.   The policy, describing the insurer as a mutual insurance company, by its terms, constituted the insured a member of the company.

The instrument was dated August 11, 1896, and the following provisions were indorsed upon it, and made part of the contract: "Thirty days' notice before payment is due, except when monthly payments are made, will be mailed to the insured from the home office to the last known address as it appears

upon the books of the company. Failure to make any payment at the home office on or before the day when due, whether the insured does or does not receive such notice, hereby cancels this contract and releases the company and the insured from any further liability, and all payments made ·on account thereof shall be forfeited to the company. Should this policy lapse by nonpayment, it may be renewed by the insured furnishing proof of good health, satisfactory to and approved by the board of directors, and upon payment of all amounts then due. The insured may, without consent of the beneficiary, diminish the amount of this policy, or appoint another beneficiary in place of the one herein named. Any change of beneficiary or assignment of this policy shall be void unless approved by the board of directors and entered upon the books of the company.''

On the 22nd day of June, 1898, Crane applied for a reinstatement of the policy as follows:

"Denver Life Insurance Company, Denver, Colo.

"Whereas, a premium payment upon my policy No. 30 became due and payable on the eleventh day of May, 1898, and by reason of the nonpayment of said premium when due my policy expired;

"Now, therefore, I, Richard M. Crane, of Denver, Arapahoe county, Colorado, occupation........ ..........do hereby apply to the Denver Life Insurance Company for reinstatement of my policy, and tender the amount of past due payment of $7.11, which will carry the payment upon my policy to August 11, 1898. In consideration of the same being accepted and my policy restored to regular standing, I agree as follows:

"First: I warrant that I am now of temperate habits, in good health and free from all diseases and infirmities. That since the date of my original appli-

cation I have had no disease, injury, infirmity or illness, nor had any medical attendance or advice for any illness, except as follows, viz.: Slightly under the weather from the warm weather; am attending to duties as usual.

"Second: I hereby agree that if any of the statements and warranties above given are not full, complete and true, the acceptance of The Denver Life Insurance Company of this or any other payment shall not make a valid claim under said policy, and the only liability against The Denver Life Insurance Company shall be the amount of this and subsequent premium payments, with compound interest added at four per cent. per annum.

"Dated at Denver this 22d day of June, 1898.
                              "R. M. CRANE."

At the same time he drew and delivered to the agent of the company his check on the First National Bank of Denver for $7.11, and took from the agent the following antedated receipt:

"Office of The Denver Life Insurance Company,
                    Denver, Colo., May 11th, 1898.

"Received of Richard M. Crane $7.11 Seven and 11-100 Dollars on Policy No. 30, being the quarterly premium from May 11th, 1898, to August 11th, 1898.
              "C. E. CHANNELL, Secretary,
                              "Per H. M."

On the 11th day of July, 1898, the company sent to the insured by mail a notice that a quarterly premium of $7.11 on his policy would be due August 11, 1898, a remittance of which by bank draft, or postoffice or express order, was requested. This notice was received by Crane on the day of its date. On the 10th day of August, 1898, the amount named in the notice, being the premium to become due on the 11th, was tendered, on behalf of Crane, to the proper officer of the company, who refused to receive it

except on condition of reinstatement of the policy. The check given by Crane on the 22nd of June, but dated the 11th of May, was received at the company's office on the day it was drawn, and was entered on its books. The entry was followed by a memorandum, "subject to reinstatement." The company collected the money on the check a few days afterwards.

Austin W. Smith, a witness for the defendant, testified that he was an agent of the defendant in 1898; that on the 11th day of May, 1898, he visited Crane's office to collect the quarterly premium due on that day; that the latter said he had concluded to let his policy lapse, that he could not spare the money; whereupon the witness told him that would be poor policy on account of the difficulty of being reinstated, and he asked witness to come round about the middle of June; that witness called on him on the 22nd of June, and asked him what he proposed as to renewing his policy, and he said he was not feeling very well, and thought it would be a good time to renew; that witness prepared the application for reinstatement, and while doing so inquired about his health; that he replied he was slightly under the weather on account of the heat; that when the application was signed, witness told him the company would have to act on his application before he could be reinstated, and he said, "I understand that"; and that witness then took the application and check and gave him the receipt.

Dr. Herbert W. McLaughlin testified that he was medical director of the company, and that at its request he called at Crane's office twice—the last of June and the first of July—for the purpose of examining him, but did not find him in, and so reported to the company. On the 19th day of July, 1898, the secretary of the company addressed a letter to Crane,

which, after stating that his policy had lapsed on
May 11 and he had applied for a reinstatement June.
22, asked him to appoint some hour when the medical
director could see him so as to pass on his applica-
tion.   To this letter Crane replied that as he held the
company's receipt for the premium due May 11, and
its notice of the premium due August 11, he saw no
necessity for reinstatement.   On the 10th day of
August, 1898, the secretary of the company sent a
check to Crane for $7.11, the purpose being to return
the premium which Crane had paid for May 11, and
again asked Crane to appoint a time to meet the
medical director.   This check Crane sent back to the
company immediately, and the company returned it
to him.

Miss Harriet A. Miner testified that she was the
company's cashier and bookkeeper; that she sent out
the notice of the premium due August 11; that such
notice was sent in all cases, whether the parties were
in good standing or not; and that the purpose of the
notice to a policy holder not in good standing, was
to protect him if reinstated.

It is insisted for the plaintiff that there was no
lapse of the policy by reason of the failure of Crane
to pay the premium of May 11, when it was due,
because, first, as to this premium the notice required
by the policy had not been given; and second, no
premium since the policy was written, had ever been
paid until after it was due, and, therefore, a custom
had been established on which the insured had the
right to rely.   On the other hand, it is contended for
the company that whether or not the notice was sent
was immaterial, because the policy further provided
that failure to make the payment when due would
have the effect of canceling the policy, notwithstand-
ing the notice was not received; also that the accept-
ance by the company of after-due premiums had not

been uniform, and had not occurred sufficiently often to establish a custom. We think that by the terms of the policy it was incumbent on the company to mail the notice to the last known address of the insured; but that, if it did so, it was not responsible for his failure to receive it. However, in view of the facts disclosed by the record, we do not regard the question of notice in this instance as being of any importance. Neither, in our opinion, is the fact that premiums were at other times accepted without question after they were payable, entitled to much weight. The practice was not habitual, for in at least one other instance, on the 8th day of December, 1897, the insured made application for a reinstatement on account of lapse of policy for failure in payment of premium due August 11, 1897. But, however the failure to mail the notice, or the acceptance of past-due premiums, might otherwise have affected the situation, the insured waived any rights he may have had in virtue of those facts, at the time he made this application for reinstatement. It is evident from his conversations with Mr. Smith on the 11th of May, and on the 22nd of June, that he was not misled by the want of notice, or the previous acceptance of over-due premiums. He claimed nothing on account of either. On the contrary, in the first conversation he expressed himself as having concluded to let his policy lapse on account of inability to pay; and in the second, he said that he understood his policy had lapsed, and that a reinstatement was necessary. He then made an application in which he stipulated that his policy had expired by reason of the nonpayment of the May premium when due. In *Appleton v. Ins. Co.*, 59 N. H. 541, 47 Am. Rep. 220, it was held that although the insured might have insisted that the policy had not lapsed, for the reason that prepayment of premiums had been waived, yet by assenting

to the claim of the insurer that it had lapsed, and consenting to its proposition of submission to a medical examination as a condition precedent to a revival of the policy, the insured waived the right to say that the insurer was estopped to claim that the policy had lapsed for nonpayment of premiums in advance. It is true that it was also held that, by reason of a violation of the new contract by the insurer, the insured became entitled to treat it as rescinded; but, unrescinded, it constituted a waiver.

On behalf of the plaintiff it is contended that the doctrine announced in that case is not applicable here, for the reason that there the contract of insurance was made with the plaintiff for her own benefit, that she brought the action, and that the acts of waiver shown in evidence, were hers; whereas, here, the insurance was effected for the benefit of the plaintiff by one who is not a party to the record, and the acts of waiver shown were his, and not hers. If at the time of the issuance of the policy, an interest vested in the plaintiff, that interest could not be affected by any subsequent acts or declarations of the person at whose instance the policy was executed. As to her, they would be the acts or declarations of a stranger, and, as against her, evidence concerning them would be inadmissible.—*Lazensky v. Supreme Lodge,* 31 Fed. 592; *Knights of Honor v. Wollschlager,* 22 Colo. 213; *Tessmann v. United Friends,* 103 Mich. 185; Niblack on Benefit Societies, § 325.

But if, by the contract, no vested interest passed to the plaintiff, and full control and dominion over the policy remained in her husband, then no such rule applies, and the evidence of what he did and said in relation to the policy, was properly received. Now this contract of insurance was not made, except conditionally, for the benefit of the plaintiff. By its terms the insured, and not the plaintiff, was consti-

tuted a member of the company. The policy provided, in explicit language, that the insured might, without the plaintiff's consent, diminish the amount of the insurance or appoint another beneficiary in her place. She, therefore, had no vested interest, but only an expectancy, which might at any time be defeated by the act of her husband. His control over the policy, subject to its terms, was as complete as if he had been, himself, the beneficiary; so that his waiver of notice, or of such right as he may have had to rely on the custom of the defendant to receive premiums after they became due, bound the plaintiff in the same manner and to the same extent that it would have bound himself, and the decision in *Appleton v. Insurance Company* is directly in point.—*Life Association v. Winn,* 96 Tenn. 224; *Steinhausen v. Association,* 13 N. Y. Supp. 36; *Martin v. Stubbings,* 126 Ill. 387; *Van Frank v. Association,* 158 Ill. 560; *Society v. Burkhart,* 110 Ind. 189; *Stewart v. Supreme Council,* 36 Mo. App. 319; *Mutual Ass'n v. Montgomery,* 70 Mich. 587; Niblack on Benefit Societies, § 325.

It is insisted on behalf of the defendant that Crane did not furnish the required proof of good health, and that, hence, he was never reinstated. The policy did not indicate the nature of the proof required, but said merely that it should be satisfactory to, and approved by, the board of directors. The insured could not know what kind of proof they would exact, until he was informed. It devolved, therefore, upon them to give him notice of what they regarded as necessary. His own statement contained in the application might satisfy them; and it appears to have done so in the previous instance. The former application for reinstatement was introduced by the company, presumably to show that it did not continually receive payments past due without protest;

but it appears that the policy was still in force on May 11, 1898, and it does not appear that any formal action was ever taken on that application, so that it alone must have been regarded as sufficient. Of course, what was done on a former occasion was not binding on the defendant in this transaction, and we mention it only as showing that proof sufficient to satisfy its board of directors would not necessarily involve evidence outside of the statement of the insured. In this case, however, it seems that at first the company was disposed to require further proof. Its medical director went to Crane's office to examine him, but did not find him, and no examination was made. The director reported his failure to the company; and afterwards, with full knowledge of the fact, it sent Crane a notice that a premium on his policy would become due on August 11. Appended to the notice were explicit directions concerning the manner of remittance of the money. This notice was evidence tending to show that the company had concluded to rest satisfied with the statement in the application, and that it elected to waive the examination. The notice that a premium would be due on the policy, and the request as to the manner of transmission of the money, assumed that the policy was in force. If it was not, no payment would be due. If the company had accepted the money, that fact would have been conclusive upon it; and it would have been estopped to deny the validity of the policy. A demand for the money would equally show its recognition of the continued existence of the policy. A demand is evidence of a willingness to receive. Courts are alert to seize hold of any circumstances that indicate an intention to waive a forfeiture.— *Insurance Co. v. Norton,* 96 U. S. 234; *Titus v. Ins. Co.,* 81 N. Y. 410; *Murray v. Association,* 90 Cal. 402.

It is true that the witness, Miss Miner, undertook to show that the sending of this notice was consistent with the company's claim that the policy was no longer in force; but her explanation was not very satisfactory. The notice was addressed to Crane; it was explicit in its terms; it was unconditioned; and whether the other evidence in the case was sufficient to overcome the presumption which attended it, was for the jury to say.

After the notice was given, the company addressed a letter to Crane, asking him to appoint a time for examination; and there was other subsequent correspondence between the parties of which such examination was the subject. But if there was a waiver, it was already complete; and no change of front on the part of the company could impair its effect.

The defendant requested the court to instruct the jury that, it appearing from the evidence that on the 22nd day of June, 1898, Crane was suffering from the disease from which he afterwards died, their verdict should be for the defendant. This request was refused, and correctly so. Crane died on the 27th day of August, 1898. Dr. Steadman was the physician who attended him. The doctor testified that he first saw Crane on the 30th of June, 1898; that he then seemed to be suffering from constipation; that a conclusion was not reached until the 10th or 11th of July, as to the nature of his trouble; and that it was then determined that Crane was suffering from cancer of the intestines. The doctor expressed an opinion that on June 30, when he was first called, Crane was suffering from the incipient or the advanced stage of the malady; but he distinctly said he could not tell how long it had been developing. Under the evidence, whether the disease was present at the time the application was signed, was a question

for the jury; and it would not have been proper for the court to take it from them. As to the sufficiency of the evidence on which the defendant claimed the right to the instruction, see *Sieverts v. Benevolent Association*, 95 Ia. 710.

The defendant also requested an instruction that the burden was on the plaintiff to show that when the insured made his application for reinstatement, he was free from any bodily disease; and another, that it was his duty to furnish proof of good health, satisfactory to, and approved by, the board of directors, before he could again become a member, in good standing, of the company. Respecting the first, the complaint said nothing about the application—that was set up in the answer; and the untruth of the statement it contained concerning Crane's health, alleged. That the insured did not truly represent his physical condition was made a matter of defense; and the burden was, therefore, on the defendant to prove it, and not on the plaintiff to prove the contrary. As to the second—as we have already said— the insured could not know what further proof than he had made would be required unless he was notified; and if such proof was waived, it need not be furnished. Without qualification, this instruction would have been misleading. Both requests were properly refused.

But an erroneous theory pervaded the principal instructions given for the plaintiff. They submitted to the jury the question whether, considering the previous transactions between the company and the insured respecting the payment of premiums, and the want of notice to the insured of the premium payable on the 11th of May, the policy had lapsed at all. As we have heretofore said, the question whether the policy had lapsed was not, in our opinion, open. The policy had lapsed, and it was not competent to the

jury to find that it had not. What we regard as the important question, namely, whether, upon the application for a reinstatement, proof satisfactory to the defendant was furnished; or, in other words, whether the defendant by its conduct waived the production of proof beyond what was furnished, was not submitted. Upon the answer to this question depends the solution of the other question, whether at the time of the death of Crane, the original policy was in force.

The judgment must be reversed.