Hurlbut, J.
Action upon a life insurance policy by appellee (plaintiff below) against appellant (defendant). About January 1st, 1908, Mor daunt M. Lowther, husband of plaintiff, secured from defendant a twenty-year endowment policy upon his life, payable to plaintiff, his wife, in the event of his death prior to its maturity. The policy contained a clause reserving a right in the insured to revoke the appointment of beneficiary therein named and at any time while the policy was in force designate a new beneficiary with or without right of revocation, by filing written notice thereof at the home office of the company accompanied by the policy, and that such change of beneficiary, if made, should “take effect upon the endorsement of the same on the policy by the company”.
The husband died February 22nd, from the ef *624 fects of a gunsliot wound. Two days before his death he, in writing, exercised his right of revocation and changed the beneficiary from his wife, Bessie Y. Lowther, to his sister and brother, Lulu G. and Bobert E. Lowther, and mailed the policy, with a notice of the change, to the home office of the company. The company received the policy February 24th, and on February 27th endorsed thereon in writing the change of beneficiary above referred to, and thereupon mailed the same to said Lulu G. Lowther at Pittsburg, Pennsylvania.
Did the facts as heretofore related constitute a change of beneficiaries'? The point of contention is sharply debated by counsel for the respective parties. Appellant relies upon Denver Life Insurance Co. v. Crane, 19 Colo. App. 191, and authorities cited, in support of the affirmative, while appellee asserts with vigor that the case of Rollins v. McHatton, 16 Colo. 203, entirely supports the negative.
In the Crane case one of the controlling questions before the court was : Did the beneficiary mentioned in the policy have such an interest therein as such as would entitle her to question a waiver of notice made to the company by the insured'? The company was a mutual one, and the policy contained a clause to the effect that the insured might, without consent of the beneficiary, diminish the amount of his policy or appoint another beneficiary in place of the one named therein, subject to approval by the board of directors. The company contended that this clause was exclusively for the protection of the company; that the beneficiary had no vested interest in the policy; that her interest was only a contingent expectancy, therefore she could not be heard to ob *625 ject to sticli waiver. Tlie court of appeals adopted this theory and held that the insured, while living, had complete control over the policy and might waive any notice or right he might have possessed concerning the policy, regardless of the wishes of the beneficiary, and that his acts in that behalf were binding upon the beneficiary.
The Rollins case involved this same qriestion, and in addition, a question as to whether or not a change of beneficiaries had been consummated by the acts of the insured who sought to effectuate such change. As to the first point, the supreme court reached an .opposite conclusion to that reached by the court of appeals, and held that compliance with the clause in the policy prescribing the mode for effectuating a change of beneficiary was as necessary for the protection of' the insured and beneficiary as for the company, and that the beneficiary could question the manner in which such change was attempted, and that such change would not be binding upon the beneficiary unless made in substantial conformity with the terms of the policy. The two eases are in conflict upon this point, and although both views are supported by authorities of high standing, wé are concluded by the decision of our supreme court as expressed in the Rollins case, in so far as the same is applicable to the facts involved in the instant case. The court in the Rollins ease further held that no attempt had been made by the insured to have the change of beneficiary entered on the record of the supreme secretary, nor did he in any way, by letter, orally, or otherwise, express to the society his desire to have such change made, in fact had wholly failed to comply with the requirements *626 of the policy in the attempt to change beneficiaries. The following quotation from that opinion states the views of the court, viz.:
“The resolution to substitute can be enforced in but one way, viz, by change of beneficiary entered upon the record’, etc. It will not do to say that the entry upon the record is directory merely, or that it is of no special importance. This entry is an essential part of the substitution, and the change is incomplete until it is made (citing authorities). The delivery of the certificate to appellant by McHatton was no compliance with the mode prescribed for effectuating a change of beneficiary. While it may be indicative of the intent of McHatton at the time, it was not the method agreed upon for the declaration of that intent. ' We cannot accept the view that this provision was inserted in the certificate exclusively for the protection of the association. It is doubtless a matter of importance to such societies that their books show the changes in Ibis respect, but it is more important to the assured that some record' of the kind be kept, in order that his wishes in the premises may not, after his death, be defeated, and obviously the beneficiary is profoundly interested in having such definite and reliable evidence of his ownership. It would be an injurious .precedent were wé to hold that the designation of the change of beneficiary by entry upon the books of the company is not imperative,” citing: Daniels v. Pratt, 143 Mass. 216; Holland v. Taylor, 111 Ind. 121; Stephenson v. Stephenson, 64 Iowa 534; Insurance Co. v. Miller, 13 Bush (Ky.) 489.
Many other decisions of force adopt the rule here laid down, one of which is worthy of note, viz: *627 Supreme Conclave Royal Adelphia v. Capella et al., 41 Fed. 1.
The Rollins opinion was founded upon the facts before the court, and as it was undisputed that no effort had ever been made by the beneficiary to have the policy delivered to the company, or have the change of beneficiary entered upon the records of the society, or to inform the company of his desire to have such change made, as required by the policy, it was there ruled that the change did not become effective. The following excerpt is taken from another part of the opinion, viz:
“Equity occasionally aids an attempted or incomplete change of beneficiary. If the assured has done his part towards perfecting the substitution, in accordance with the method prescribed, but, owing to circumstances over which he has no control, the change is not entirely consummated at the time of his death, equity will sometimes treat the substitution as complete — Bacons Benefit Societies, etc., 309-310, and cases — but it is an essential prerequisite to the interposition of equity that the assured has in ■good faith attempted to comply with the prescribed mode of substitution. McHatton made no effort to do this. It does not appear that he communicated orally or in .writing to the secretary or to any other officer of the association a desire to have the proceeds from the risk paid to his son, or that he otherwise sought to secure the proper entry in the association’s books.” See Heydorf v. Conrack, 7 Kan. App. 202; Supreme Tent v. Altman, (Mo.) 114 S. W. 1107; Walsh v. Sovereign Camp, (Mo.) 127 S. W. 645; Association v. Kirgin, 28 Mo. App. 80; Mayer v. Association, 2 N. Y. Supp. 79; Kepler v. Supreme *628 Lodge, 45 Hun. 274; Cooley’s Brief on Life Insurance, vol. 4, p. 3769; Berkely v. Harper, 3 App. Cases, D. C. 308; Relief Association v. Strode, 103 Mo. App. 694; McGowan v. Foresters, 104 Wis. 173.
In the case at bar there can be no question but that everything required of him by the policy to the minutest detail was done by the insured, to consummate a change of beneficiaries, except that he failed to lodge or file the notice of change with the company at its home office, as he attempted to do. He wrote and mailed a letter to that office, accompanied by the policy. In the letter he clearly revoked the prior appointment of plaintiff as beneficiary and appointed his brother and sister as the substituted beneficiaries. There is no suggestion of mental weakness on his part, or of fraud or duress. He was dangerously wounded, and it is a fair presumption that at the time his mind was concerned with matters of serious moment. Everything he then did and requested was indicative of a solemn intention then and there to have the money payable under the policy go to his brother and .sister, and not to his wife. The company received the letter and policy two days after the death of the insured, and endorsed the change on the policy and mailed it to one of the new beneficiaries. Such being the situation, was there a substantial compliance by the insured with the terms of the policy, notwithstanding its failure to reach the company in due course before his death? Let us turn to the language of the policy. That part material here reads as follows:
“The insured, if there be no existing assignments of the policy made as herein provided, may, while the policy is in force, designate a 'new bene *629 ficiary with or without reserving right of revocation, by filing written notice thereof at the home office of the company, accompanied by the policy, for suitable endorsement thereon. Such change shall take effect upon the endorsement of the same on the policy by the company. ’ ’
It will be noticed that no consent of the company is required to consummate the change, nor is there any recital to the effect that such change of beneficiary shall not be valid until the notice and policy be so filed and endorsed, or until the company has consented to, or approved of, the same. We mention this at this time because of the fact that many cases cited in the briefs construe policies containing such recitals, and the courts appear to lay considerable stress thereon.
"When Lowther died the letter and policy were well on the way to the home office of the company. Had they reached that office before his death the company was legally bound, under the contract, to file the same and endorse on the policy the change of beneficiaries as designated by him. It had no discretion to exercise in the premises. The company could not in the slightest degree question the revocation of the former beneficiary by the insured, nor the selection made by him of the substituted beneficiaries. By the terms of the policy the company had conferred on the insured an unconditional right to, at any time or place, revoke the appointment of the existing beneficiary and substitute another in her place. When the insured resolved in his mind to change the beneficiary from his wife to his sister and brother he was mortally wounded, and was two thousand miles from the home office, but he promptly *630 made use of the most reliable and expeditious agency known in order to place the policy in the hands of the company at the first possible moment. In the shadow of death he had solemnly registered his wish and desire to have the fund go to his sister and brother. His wishes should be respected, unless some clear, well-settled and imperative rule of law prevents. We do not think such obstacle exists. Had the company, when mailing this contract, reserved any right to itself to control, or finally pass upon, the actions of the insured in changing beneficiaries, we would be confronted with a different question. It could not have been within the contemplation of the parties to the contract of insurance when it was made that a revocation of one beneficiary and designation of another, made in writing, accompanied by the policy, deposited in the public mail for carriage to the company, during the lifetime of- insured, should fail to become effective only because the insured should die before the notice and policy arrived at the office of the company in due course. Death intervening between the deposit of the notice in the mail and its full delivery at the home office may, and we think should, be regarded as one of the contingencies making it impossible to complete the change after all had been done that could be done by the insured, and that in such case, as said by Justice Helm in the Rollins case, equity will treat the substitution as complete. Therefore we think that under such circumstances and the facts of this case the failure of the letter to reach the company before the insured’s death was immaterial. It appears to the court as illogical to hold that where the company was bound to give full force and credence *631 to the change, the time of indicating its willingness to do what it was obliged to do, willingly or unwillingly, is of controlling importance.’
The clause in the policy, “such change shall take effect upon the endorsement of the same on the policy by the company”, in view of the entire paragraph in which it is found, does not suggest to our mind a condition precedent to the consummation of the change of beneficiary, but rather a provision for protection against such possible oral or other changes by the insured of which the company has not received notice. In such case this clause would protect the company against liability as between contesting beneficiaries for the fund. The first change received and endorsed by it would be upheld, and the record thus made would likewise protect the true beneficiary and give effect to the insured’s wishes.- The receipt of the notice and policy by the company two days after insured’s death, of which it had no knowledge, did not relieve it of the ministerial duty imposed by the terms of the contract, of filing and endorsing the same. There is in this case no question of waiver involved, as the company had no discretion in the premises.
We do not think the conclusions we have reached are in conflict with the Rollins case, or any other decision of our supreme court within our knowledge. The facts in that case are entirely dissimilar to those here considered. The court there only decided that the attempted change of .beneficiary by the insured was ineffective for the reason that the conditions of the policy respecting the change had not been followed, nor had any effort been made by the insured to comply therewith. He had simply placed the pol *632 icy in the hands of a third person, many years before his death and before his second marriage, with the oral declaration that he wanted his son to receive the fund in case of his death. He entirely ignored the requirements of the policy relative to changing the beneficiary. Some general language was used in the opinion not necessary to support its conclusions, but even as to such language there appears a strong intimation therein favoring the views of this court as herein expressed. However this may be, the supreme court, through Justice Campbell, has expressed itself upon the effect of general language used in opinions, in these words, viz:
‘ ‘ The rule is familiar that general language in an opinion is to be taken in connection with the facts of the particular case.” Halbour v. Cuenin, 45 Colo. 507.
The conclusion we have reached is based upon the principle or rule announced in the Rollins case, supra, viz:
“Equity occasionally aids an attempted or incomplete change of beneficiary. If the assured has done his part towards perfecting the substitution, in accordance with the method prescribed, but, owing to circumstances over which he has no control, the change is not entirely consummated at the time of his death, equity will sometimes treat the substitution as complete — Bacons Benefit Societies, etc., 309-310, and cases — but it is an essential prerequisite to the interposition of equity that the assured “has in good faith attempted to comply with the prescribed mode of substitution.”
The case of Knights of Maccabees v. Sackett, 34 Mont. 367, appears to be the strongest case cited in *633 support of appellee’s position. In that case the change of beneficiaries could only be made in pursuance of the by-laws of the association. The bylaws are not recited in,the opinion, and we are unable to compare them with the contract before us. We do not know whether or not the by-laws, taken as a whole, were tantamount in letter and spirit to the requirements of this contract concerning change of beneficiaries. Even if they were, we are not inclined to follow that case or others holding the same views. In each of the other cases cited by appellee (list following) the facts are distinguishable from the case at bar, in that there was a failure on the part of the insured to pay the required fee; or the policy or contract contained a recital to the effect that a change of beneficiary by the insured should be void unless first entered on the records of the company; or consent of the company be first obtained ; or notice of the change be first received; or other requirement of similar import and controlling effect, as construed by those courts. Fink v. Fink, 171 N. Y. 616; Stringham v. Iowa Legion of Honor, 72 Ia. 683; Independent Foresters v. Keliher, 36 Ore. 501; Hamilton v. Arcanum, 189 Pen. St. 273; McLaughlin v. McLaughlin, 104 Calif. 171; Cousman v. Modern Woodmen, 69 Neb. 710; C. P. I. Co. v. Aetna Ins. Co., 127 N. Y. 608.
'Something has been said in the briefs suggesting a distinction between old line life insurance companies and fraternal societies'when construing contracts of those corporations. We believe in some jurisdictions there is a tendency to recognize such distinction, but the weight of judicial authority appears to be the other way. However, it is the adopted *634 rule in this state that no such difference exists. In Love v. Clune, 24 Colo. 237, Justice Goddard, in passing on the question, used the following language:
Decided July 8, A. D. 1912.
Rehearing denied October 14, A. D. 1912.
“There is no inherent difference between mutual benefit associations and ordinary life insurance companies m regard to the right to change beneficiaries'. ’ ’
In view of what has been heretofore said, the judgment will be reversed.

Reversed and Remanded.

Walling, J., dissents.