**Joseph Kavanagh, Complainant and Appellee, v. New England Mutual Life Insurance Company and Lucy Kavanagh, Defendants. Lucy Kavanagh, Appellant.**

## Gen. No. 29,846.

1. INSURANCE—*sufficiency of proceedings to effectuate change of beneficiary.* Under a life insurance policy giving the right to change beneficiaries and providing the change should take effect only when indorsed thereon by the insurer, a change of beneficiary became effective, where the insured made written request for the change of beneficiary, which was received by the home office of the insurance company and the letter acknowledged receipt thereof during the lifetime of the insured, with the statement that the change would be indorsed upon the policy when received, but where the insured's wife, the original beneficiary, who had shot the insured and was charged with his murder, had possession of the policy and refused to give it up, and the insured died before any indorsement could be made thereon, the letter from the company having been received on the day of his death, since the insured had done everything within his power to effectuate a change, exact compliance with all requirements being prevented only by the wife's refusal to surrender the policy.

2. INSURANCE—*rights in proceeds of life insurance policy.* Where the beneficiary was held entitled to the insurance in question, he

Kavanagh v. New England M. L. Ins. Co. et al., 238 Ill. App. 72.

was required to pay to the former beneficiary, out of the amount of the policy, the amount which such old beneficiary had loaned to the insured, and for which she held the policy as security, together with certain premium payments made by her.

3. COSTS—*when costs taxed equally between parties.* The costs of the litigation for the proceeds of life insurance were evenly divided between the old and the new beneficiaries, where the amount of the policy was awarded to the new beneficiary, but he was required to pay to the old beneficiary money advanced by her to or for the insured.

Appeal by defendant from the Superior Court of Cook county; the Hon. OSCAR HEBEL, Judge, presiding. Heard in the second division of this court for the first district at the October term, 1924. Reversed and remanded with directions. Opinion filed July 14, 1925.

LESLIE H. WHIPP, for appellant.

WARREN PEASE, for appellee.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

This appeal is prosecuted to reverse a decree of the superior court of Cook county, entered August 8, 1924, wherein the court ordered that the New England Mutual Life Insurance Company of Boston, Massachusetts (hereinafter referred to as the Insurance Co.), pay to complainant or his solicitor the sum of $4,911.50, and that Lucy Kavanagh pay the costs of the proceeding.

Complainant's original bill was filed on April 27, 1923, to which the Insurance Co. filed an answer, and, after complainant had filed an amended bill, Lucy Kavanagh filed her answer thereto. It is alleged in substance in the amended bill that Patrick H. Kavanagh, brother of complainant, died at a hospital in Chicago, Illinois, on February 9, 1923, his death being the result of wounds received on February 3, 1923, when Lucy Kavanagh, his wife, shot him with a pistol; that she was arrested, charged with the crime of mur-

74 APPELLATE COURTS OF ILLINOIS.

Kavanagh v. New England M. L. Ins. Co. et al., 238 Ill. App. 72.

der, and afterwards indicted by the Grand Jury of Cook county on said charge and released on bail; that on January 29, 1921, the Insurance Co. issued to Patrick H. Kavanagh a policy of life insurance, No. 421,051, for the sum of $5,000, by the terms of which, in consideration of the application and the payment in advance of an annual premium of $129.50, it agreed at his death to pay said sum to Lucy Kavanagh, his wife "(with the right reserved to the Insured to change the Beneficiary)" less any indebtedness to the company on the policy and less any unpaid portions of the premium for the then current policy year; that the policy provided that "when the right to change the Beneficiary has been reserved, the Insured, subject to any assignment, upon written request filed with the Company at its Home Office, may from time to time designate a new Beneficiary hereunder, or have the Policy made payable to his estate, *such change to take effect only when endorsed hereon by the Company*"; that upon receipt of the policy Patrick H. Kavanagh delivered it to his wife and she has since had possession of the same; that he paid the premiums required to keep it in force and that there is now due on the policy, after making certain proper adjustments, the sum of $4,911.50; that on February 5, 1923, when he was lying in the hospital suffering from the effects of said pistol shot, but being in full possession of all his mental faculties, he directed a representative to procure from the Chicago office of the Insurance Co. the usual blank in use for requesting a change of beneficiary to be made in a policy; that said blank was procured and on the same day he signed such paper as follows: "In accordance with the right reserved to me under Policy No. 421,051 to change the beneficiary thereunder, I hereby revoke the appointment of my wife, Lucy Kavanagh, as beneficiary, and request that said policy be changed so as to be payable to my brother, Joseph Kavanagh, if he shall survive me, with right of revocation by

me''; that such paper was in proper form for making a change of beneficiary according to the rules of the Insurance Co., and on February 6, 1923, was mailed to the Insurance Co. at its home office at Boston, Massachusetts, and accompanying it was a letter written to the Insurance Co. by said representative, in which the latter mentioned the details of the shooting, the serious condition of Patrick, the improbability of his living, his anxiety to have a change of beneficiary made in the policy at once, and stated that Patrick ''is unable to procure the policy owing to the fact that his wife is in jail and has possession of the policy,'' and that ''his wife would not give it up under any circumstances''; that, at the time said request and letter were mailed, the policy had not been assigned to any person and that there was no restriction or impediment to Patrick's right to change the beneficiary to such person as he might designate; that on February 8, 1923, the Insurance Co. from its home office wrote a letter, signed by its assistant secretary, to Patrick's said representative in Chicago as follows: ''In reply to your letter of the 6th inst. relative to Policy No. 421,051, on the life of Patrick H. Kavanagh, we will state that the form for change of beneficiary executed by the insured, revoking his wife, Lucy Kavanagh, and requesting that the policy be made payable to his brother, Joseph Kavanagh, if he shall survive him, with right of revocation, is received, and has been placed on file with our record of the policy. *Upon receipt of the policy we will endorse the change in accordance with the request''*; that this letter was received by Patrick's representative in Chicago on February 9, 1923, the day that Patrick died; that by reason of the foregoing Patrick did all that it was possible for him to do to effectuate the change of beneficiary in the policy; that on February 15, 1923, complainant executed and sent to the Insurance Co. due proofs of the death of Patrick and notice of complainant's claim; and that Lucy Kava-

nagh has also made claim to the whole amount due under the policy. The substance of the prayer of the amended bill is that the court enter a decree that Patrick, during his lifetime, made said change in the beneficiary under the policy, that Joseph Kavanagh became the beneficiary and is entitled to the entire amount due, and that Lucy Kavanagh has no right or interest therein.

There are other allegations in the amended bill to the effect that on February 5, 1923, Patrick duly executed on one of the company's forms an assignment of all his right, title and interest in the policy. to Joseph Kavanagh, which on the same day, together with the affidavit of Patrick on one of the company's forms and a letter of said representative, were forwarded to the company's home office. Also other allegations to the effect that on February 5, 1923, at said hospital, Patrick and Joseph entered into a verbal contract whereby Patrick agreed to make Joseph the beneficiary under the policy, in consideration of Joseph agreeing to pay for the expense of hiring a private room for Patrick and for other hospital expenses, and that said contract was performed on the part of Joseph. In view of the position taken by complainant's counsel in this Appellate Court, namely, that complainant is not relying for a recovery on said contract or said assignment, except in so far as the assignment tends to disclose an intention on the part of Patrick to effectuate a change in the beneficiary of the policy to Joseph, we deem it unnecessary to further consider said allegations or the evidence introduced on the hearing relative thereto.

In the answer of the Insurance Co. it admitted the issuance of the policy on January 29, 1921, and that $4,911.50 was due thereunder, but alleged that it did not know whether Lucy or Joseph was the rightful beneficiary, or who had or who has possession of the policy; that no indorsement had ever been made thereon by it for a change of beneficiary; that when the

said written direction or request of Patrick H. Kavanagh of February 5, for a change of beneficiary from Lucy to Joseph Kavanagh was received by it, the policy was not produced, nor had it since been, "so as to enable this defendant to endorse said change of beneficiary on said policy"; that Lucy Kavanagh had made claim on it for the proceeds of the policy; that it had always been willing, without risk to itself, to pay the proceeds to whomsoever was entitled to it; and that it "hereby offers to bring said proceeds into court as the Court may direct."

In the answer of Lucy Kavanagh she alleged in substance that she was living separate and apart from her husband for several months before his death; that before the separation he had borrowed certain moneys from her which he had refused to return; that after the separation he had refused to contribute to her support; that on February 3, 1923, she visited him at his business office and demanded the return of the moneys borrowed and also support money; that they had a heated dispute, and in the struggle which followed a revolver, which she carried, was accidentally discharged and he was so seriously wounded that he died on February 9; that before his death no person had made any demand upon her for the policy of insurance which was in her possession; and that she was arrested on the charge of murdering her husband and was afterwards released on bail pending the trial on an indictment which had been returned. She denied that any change of beneficiary in said policy had properly been effected prior to her husband's death and claimed that she was entitled to the entire proceeds of the policy. She afterwards filed an amended and supplemental answer in which she alleged that in December, 1923, she was tried on said indictment in the criminal court of Cook county, and on December 19, 1923, was found not guilty of said murder charge by a jury and discharged.

78        APPELLATE COURTS OF ILLINOIS.

Kavanagh v. New England M. L. Ins. Co. et al., 238 Ill. App. 72.

On January 17, 1924, the cause was referred to a master in chancery to take evidence and report his findings of fact. At the hearing considerable evidence, oral and documentary, was introduced. Complainant's evidence sufficiently established such of the allegations of his amended bill as are first above set forth. Lucy Kavanagh showed by the proper record that she was acquitted by a jury of the murder charge. She testified in substance that she was married to Patrick H. Kavanagh on August 6, 1914, at which time he was working as a bartender; that after that he was a bell boy in hotels for about five years; that at the time of his death he and another were engaged in the business of running the so-called "National Club" on West Madison street, Chicago; that about February 1, 1921, he gave her the insurance policy and she placed it in her safety deposit box and never thereafter took it out until she gave it to her attorney to bring to court; that when he gave her the policy *she gave him $2,100 in cash,* and also paid him in cash $33.50 for the first payment on the first annual premium; that on two subsequent occasions she made payments to him to be applied on premiums due, on the first occasion $27.41, and on the second $28.75, and that on all three occasions her husband gave her the company's receipts for the payments (introduced in evidence by her); that she made these premium payments for him because he didn't have the money at the time they became due; that no part of the $2,100, or of said premium payments, had ever been repaid to her; that at the time she "loaned" him the $2,100 and received the policy, she "did not get a note or anything except the policy"; that no one ever made a demand upon her for the policy before her husband's death; and that "it would have been useless to make a demand for the policy without the payment of the money." Her testimony in these particulars was uncontradicted.

Kavanagh v. New England M. L. Ins. Co. et al., 238 Ill. App. 72.

After the master's report, making certain findings of fact in accordance with the evidence and containing a transcript thereof, had been filed, the court overruled all exceptions to the report and found in the decree that "during his life Patrick H. Kavanagh, in accordance with the right which he had under said policy of insurance, * * * changed the beneficiary under said policy from Lucy Kavanagh to Joseph Kavanagh, so that Lucy Kavanagh ceased to be the beneficiary thereunder, and Joseph Kavanagh became such beneficiary, and was such beneficiary at the time of the death of said Patrick H. Kavanagh, and * * * that said Joseph Kavanagh is now rightfully entitled to the moneys due under said policy of insurance, and that the amount thereof is $4,911.50."

Exhaustive briefs, supplemented by oral arguments, have been presented by respective counsel. The main contention of counsel for Lucy Kavanagh is that no change of beneficiary of the policy was effected according to its terms, because no indorsement of any change was made on the policy by the company at its home office. On the other hand complainant's counsel contends that where, as here, the insured did all that was within his power under the circumstances to change the beneficiary, equity will regard that as done which should have been done and decree that the beneficiary was changed before the death of the insured. After reviewing the evidence and many adjudicated cases we have reached the conclusion that that portion of the decree appealed from, wherein it was decreed that Patrick H. Kavanagh, in accordance with the right which he had under the policy, changed the beneficiary thereof before his death from Lucy Kavanagh to complainant, is correct, and is in accordance with the general current of authority in cases where the provisions in the policies were substantially the same as in the present policy. (See *State Mut. Life Assur. Co. v. Bessett,* 41 R. I. 54; *John Hancock*

*Mut. Life Ins. Co. v. Bedford*, 36 R. I. 116; *Quist v. Western & Southern Life Ins. Co.*, 219 Mich. 406; *White v. White*, 194 N. Y. Supp. 114; *Mutual Life Ins. Co. v. Lowther*, 22 Colo. App. 622, 126 Pac. 882; *Garrett v. Garrett*, 31 Cal. App. 173, 159 Pac. 1050.) Counsel for Lucy Kavanagh cites the case of *Freund v. Freund*, 218 Ill. 189, as evidencing that the law in this State is to the contrary, but we think that the *Freund* decision is distinguishable from the present case and the cases above cited. As we read the *Freund* decision it was based largely on the facts that there was a statute of the State of New York, in which the insurance company was incorporated and had its home office, requiring the *consent* of the company to a change of beneficiary, that the insured's application for such a change did not reach the home office of the company until after the insured had died, and that the company never consented to the change. The insurer in the present case is a corporation of a different State and there is no evidence of the existence of a similar statute in that State. Furthermore, in the present case, the insured's proper written application for a change of beneficiary was received and acknowledged by the home office of the company before the death of the insured. And in the letter of acknowledgment the company wrote that "upon receipt of the policy *we will endorse the change* in accordance with the request." In the *Freund* case, after referring to certain decisions cited by counsel in that case, the court said (p. 204): "In many of these cases the assured was required to surrender the old certificate, that had been issued to him, before a new certificate was issued, and the facts showed that the beneficiary had refused to surrender the old certificate, so that the insured was unable to deliver it up to the company when he applied for a new certificate; and in such cases it was held that the assured had done all he could do, and that it would be inequitable to allow a beneficiary to take advantage of his own

wrong. No such state of facts exists here.'' And, as to the distinguishable features in the *Freund* case from those of the present case, see also, *State Mut. Life Assur. Co. v. Bessett,* 41 R. I. 54, 61; *Gross v. Strzyzowski,* 124 Ill. App. 300, 305; *O'Connell v. Supreme Tent of Knights of Maccabees,* 153 Ill. App. 232, 235.

But there is another maxim to the effect that he who seeks equity must do equity. And we have reached the further conclusion that complainant is not entitled to the entire amount due on the policy, $4,911.50, tendered by the Insurance Co. into court. We think it sufficiently appears from the uncontradicted evidence of Lucy Kavanagh, as to the *transaction* she had with her husband at the time the policy was issued to him and delivered by him to her, that she was given the policy as security for a loan from her to him of $2,100, no part of which he ever repaid. And we think that, in equity and good conscience, out of the $4,911.50, there should be paid to her the sum of $2,100, together with the amount of said three premium payments so made by her, aggregating $89.66, in all $2,189.66, and the balance $2,721.84 paid to Joseph Kavanagh (see *Conner v. Conner,* 145 Ill. App. 608; *Supreme Council Royal Arcanum v. Tracy,* 169 Ill. 123, 128); and that the costs of the litigation in the superior court, as well as the costs in this Appellate Court, should be divided equally between Lucy Kavanagh and Joseph Kavanagh.

Accordingly the decree of the superior court is reversed and the cause is remanded to that court with directions to enter a new decree in accordance with the views herein expressed.

*Reversed and remanded with directions.*

BARNES, P. J., and FITCH, J., concur.