LIZZIE WALSH, Appellant, v. SOVEREIGN CAMP OF THE WOODMEN OF THE WORLD, Defendant; ST. LOUIS UNION TRUST COMPANY, Respondent.

St. Louis Court of Appeals. Argued and Submitted March 15, 1910. Opinion Filed April 19, 1910.

1. APPELLATE PRACTICE: Conclusiveness of Court's Finding Under Conflicting Evidence. The findings of the chancellor on conflicting testimony will ordinarily be followed on appeal, though the court on appeal is not bound thereby.

2. LIFE INSURANCE: Action on Policy: Interpleaders: Equitable Proceeding. Where a benefit order, sued on a certificate by the beneficiary named therein, pleaded that the member

attempted to change the beneficiary by making the certificate payable to his minor children instead of his wife, and asked that the wife named as beneficiary in the original certificate and the curator of the children interplead, and the wife averred that at the time of the attemped change the member was not of sound mind, and the curator claimed the certificate by virtue of the attempted change of beneficiaries, the cause became a suit in equity, and the controversy should be determined according to equitable principles.

3. **CONTRACTS: Construction: Effectuating Intent: Equity.** Where the intention of the parties to a contract is clearly manifest or can be ascertained with reasonable certainty, equity will carry it out, though the form of its expression may be defective, either in non-compliance with some specific rules or even conditions of the law itself.

4. **LIFE INSURANCE: Fraternal Beneficiary Association: Change of Beneficiary: Non-conformity to Rules.** The rules of a beneficiary order required that the name of the beneficiary should be given in every benefit certificate issued, and that if the member desired to change the beneficiary he could do so by forwarding to the sovereign camp his certificate with a request written thereon, giving the name of the new beneficiary. A member, who did not have the certificate, executed an instrument asking for a change of beneficiaries so as to make the certificate payable to his children, instead of to his wife, and asking for a new certificate. The instrument was sent to the sovereign camp, and it returned the same with the statement that it was necessary that the request for a change of beneficiaries be filled out on the official blank of the order, a copy of which was inclosed. The member died before the instrument from the sovereign camp was received. *Held,* (1) That while the form in which the change of beneficiaries was attempted to be made was not strictly in accordance with the rules of the order, it was substantially as required by them; (2) That equity, as between the original and new beneficiaries, will enforce the intent of the member to make the change of beneficiaries, though death intervened before he could conform to the rules and formally express his intention.

5. ——: ——: ——: ——: **Failure of Order to Object.** The failure of a fraternal beneficiary association to insist on the form required by its rules and by-laws for a change of beneficiaries does not bind parties claiming under the rules of the order.

Appeal from St. Louis City Circuit Court.—*Hon. Robt. M. Foster* and *Hon. Geo. H. Williams,* Judges.

AFFIRMED.

*Julius T. Muench* for appellant.

(1)   Where the rules of a fraternal beneficial association prescribe a method for a change in the beneficiary, such method is exclusive, and must be strictly followed.   Coleman v. K. of H., 18 Mo. App. 189; Head v. Supreme Council, 64 Mo. App. 212; Hoffman v. Grand Lodge, 73 Mo. App. 77; Wallace v. Life Assn., 80 Mo. App. 102; Ross v. Gd. Lodge, 86 Mo. App. 621; Flowers v. Sovereign Camp, 90 S. W. 526; Niblack on Ben. Ins., sec. 220; Bacon on Ben. Soc., 307; Holland v. Taylor, 111 Ind. 127; 3 Am. and Eng. Ency. of Law (2 Ed.), 993; Gd. Lodge v. Elsner, 26 Mo. App. 108; Legion of Honor v. Smith, 55 N. J. Eq. 466; Sanger v. Rothschild, 123 N. Y. 77; Mut. Ben. v. Burkhart, 110 Ind. 189; Presbyterian Mut. v. Allen, 106 Ind. 593; Mut. Ben. Assn. v. Brown, 33 Fed. Rep. 11.   (2)   The rights of the parties become fixed at the death of the member, and noncompliance with the prescribed mode of substitution cannot be waived by the association after the member's death.   Keener v. Gd. Lodge A. O. U. W., 38 Mo. App. 550; 3 Am. and Eng. Ency. Law (2 Ed.), 998.   (3) The original beneficiary has the right to challenge the truthfulness of the affidavit made by the member for the purpose of securing the consent of the association to a change of beneficiary.   Leaf v. Leaf, 92 Ky. 166; Ben. Soc. v. Murphy, 65 N. J. Eq. 60; Royal Arc. v. Tracy, 169 Ill. 123.   The courts will protect the equities of the natural beneficiary in a benefit certificate, and the equities in this case are all with the widow.   Leaf v. Leaf, supra; Catholic Ben. Soc. v. Murphy, supra; Gd. Lodge v. O'Malley, 114 Mo. App. 191, 213 Mo. 269.

*Geo. D. Harris* and *W. H. & Davis Biggs* for respondent.

(1) It being established that the insured clearly intended to change the beneficiary in his benefit certificate, and he having done all in his power under the circumstances shown in the evidence to make the change according to the regulations of the society, and it being beyond his power to comply literally with the association's by-laws, a court of equity will treat the change as having been legally made. Gd. Lodge v. O'Malley, 114 Mo. App. 205, s. c. 213 Mo. 269; Relief Association v. Strode, 103 Mo. App. 709; Hofman v. Gd. Lodge, 73 Mo. App. 53; Maccabees v. Altman, 114 S. W. 1107; Relief Association v. Tierney, 116 Mo. App. 447; Lahey v. Lahey, 61 L. R. A. 795; Isgrigg v. Schooley, 125 Ind. 95; Tilworth v. Tilworth, 20 Pac. Rep. (Kas.) 213; Hale v. Allen, 75 Miss. 211; Supreme Conclave v. Capella, 41 Fed. 1; Marsh v. Supreme Council, 149 Mass. 512; Gd. Lodge v. Child, 70 Mich. 163; Nally v. Nally, 74 Ga. 669; Association v. Kirgin, 28 Mo. App. 80; 1 Bacon Ben. Soc., secs. 310, 310a. (2) By paying the money into court the order waived a compliance with its by-laws and regulations. Hofman v. Gd. Lodge, supra; Tilworth v. Tilworth, supra; Hanson v. Assn., 59 Minn. 123. (3) Mrs. Walsh, having withheld the certificate from the deceased Patrick Walsh, and thereby prevented him from complying with the by-laws of the order in making the change, she should now be estopped from asserting that the by-laws of the order were not complied with in making the change. Lahey v. Lahey, 61 L. R. A. (N. Y. Court of App.) 795; Supreme Conclave v. Capella, supra; Gd. Lodge v. Kohler (Mich. 1895), 63 N. W. Rep. 897; Jory v. Supreme Council, 105 Cal. 20. (4) The fact that Mrs. Walsh paid the dues and assessments gives her no claim upon the fund. Sec. 1417, R. S. ; Fisk v. Aid Union, 11 Atl. Rep. 84.

STATEMENT.—One Patrick W. Walsh was a member of the Woodmen of the World and held a beneficiary certificate in that order which made the fund ($2000) payable at his death to his wife, Lizzie Walsh. Patrick Walsh died at the city of St. Louis on the 5th of December, 1907. He had been sick at intervals and a patient in hospitals in St. Louis at intervals prior to his death, and the certificate showing his membership issued by the Sovereign Camp of Woodmen of the World and designating his wife Lizzie as beneficiary was kept in a bureau drawer in the home, apparently in the custody of the wife, but there is nothing in the record to show that she had ever refused to turn it over to her husband. Her testimony is to the effect that she kept it locked in the bureau drawer with her other papers to keep the children from getting at them and that the key of this drawer lay on the mantel of the room in which the bureau was kept. There was a blank form, apparently printed on the back of this certificate, to be filled up in case the owner of the certificate desired to change the beneficiary. About the end of November, 1907, Patrick Walsh was confined in the City Hospital in St. Louis, sick. On the 29th of November, a Mr. Schulenburg, who was clerk at the time of Sovereign Camp No. 242, Woodmen of the World, of which Patrick Walsh was a member, went to the city hospital with half a dozen friends, apparently to call on Walsh. The hospital authorities only allowed two of them to go up together and Mr. Schulenburg and Mr. Muntzel went up into Walsh's room. Asked what Walsh had said on that occasion as to this benefit certificate, Mr. Schulenburg testified that he didn't hardly know what he said as he was a little bit vindictive at the time, but he said he wanted to give all of the benefit to the child; appeared to be vindictive against his wife; wanted to make the change to his child. Walsh did not have the certificate with him and nothing was done about making a change in the beneficiary that night of the 29th. Schulenburg, answering the request of Walsh,

told him that he would be down the next night to make the change that Walsh wanted. The next night Schulenburg telephoned to a notary to meet him at the hospital that night, that is, November 30th, and they met there. He testifies that he could not find any proper blank that the law required to fill out, so he went down to the hospital that night and had the notary there and they made out a blank form as near as they could make it. As made it is as follows:

"To the Sovereign Camp, Woodmen of the World:

"Whereas, beneficiary certificate Number 47886, issued on the 16th day of December, 1904, payable to my wife, Lizzie Walsh, I hereby desire to change the same to my three children as follows: Thomas W. Walsh, James H. Walsh and John P. Walsh.

"The original being withheld, I hereby take this means of relinquishing same and ask for a new certificate in the names of the above beneficiaries."

Walsh could not write and it was written by the notary. Walsh made his mark, the notary writing his name, and Schulenburg signed as a witness, and thereupon the certificate of the notary that it had been subscribed and sworn to before him as notary on the 30th of November, 1907, by Patrick W. Walsh was attached, the notary affixing his official seal. The reason this was not on a blank provided by the order was, as stated by Mr. Schulenburg, that he had no blanks outside of the certificate and Walsh did not have the certificate there, so that it could not be filled out on the back of the certificate. At the time Walsh said nothing about where the certificate was. The sentence in this affidavit, "the original being withheld," was written in by the notary as what Walsh said at the time. They asked him why he didn't have the certificate but he did not say anything further about it being withheld. Mr. Schulenburg testified that they had tried to fix the paper up in about the same form as the regular one, and that the expression in the affidavit, that the certificate was withheld, was put in

because Walsh did not have it there with him. ·Asked if he, as secretary, did not know that the change of beneficiary had to be on the back of the certificate, he answered, "It should be done, otherwise—no, it can be done in a different way, on a blank form under oath. We issue oftentimes certificates that are lost or destroyed or stolen, or something else." Didn't have the form with him at the time they wrote this, so they had to make up this form. Asked by the court why he had stated that Walsh appeared to be vindictive toward his wife, he stated that his reason for saying that was that the night before or ten days or so before he (Walsh) had attempted to change the certificate. This was when Walsh and Mr. Schulenburg were at Walsh's house, and he said to Schulenburg, "I want to give her (referring to his wife) fifteen hundred dollars and five hundred dollars to the baby," and that he had done all he could or something of that kind. Schulenburg was asked by the court as to what Walsh had said as to why he changed now from that division of the money, five hundred dollars to the baby and fifteen hundred dollars to his wife, and now wanted to change it by giving all to his three sons and not give his wife anything, and witness answered that he didn't remember that he said anything particular about that; he didn't say anything about it to the notary, no more than that he wanted to make the change; all the notary knew about it was that he wanted to make the change; that he wanted to make it all over to the children, but he did not give any reason for making it to the three children. After the paper had been executed on this night of the 30th of November, Schulenburg, as clerk of the Sovereign Camp, sent it to the Sovereign Camp, Woodmen of the World, at Omaha, Neb. November 30, 1907, the night on which this paper was·executed, was Saturday night, but witness was not certain whether he sent it Sunday or Monday. He sent it to the Sovereign Camp at Omaha; put it in an enve-

lope and stamped the envelope and mailed it to head-quarters. The notary, Mr. Kredell, testified that when Mr. Schulenburg telephoned him to meet him at the city hospital at 7:30 on the evening of November 30th, he got there about that time, taking his seal with him, and Mr. Schulenburg took him up to Walsh's room, saying Walsh wanted to change his beneficiary. Mr. Kredell then testified as follows in answer to the direction of the court that he tell everything that happened:

"I asked Mr. Walsh what he wanted done, and he told me he wanted to give each one of his children one-third, I think it was; and then I got out a piece of paper, and began to give me the names of the three children who he wanted to have this money in case of his death. And he give me the names, I wrote them down on a piece of paper, and walked out in the hall, and asked one of the nurses if she would give me a piece of paper to write, to make an affidavit. In the meantime, I asked Mr. Schulenburg if he didn't have one of the forms from the head camp, etc. He didn't have any with him. So I told him we would have to do the best we could without it. I walked out in the hall, asked the nurse for a piece of paper, she got me a piece of paper. We sat down and wrote up this affidavit. After we had written it up we went back to the room; I told Mr. Walsh I was ready, read it off to him, and asked him if he could sign. 'No,' he says, he thinks he is a little too weak. I said, you can make a mark? He says, 'Yes.' So he laid in bed, I made the cross and he touched my pen. After that we walked out in the hall. There was no desk in the room. I therefore had to go back in the hall to get something to write on. Went back into the hall, I put my seal on and signed it. Mr. Schulenburg signed it as a witness. I think that was all there was to it."

He further testified that he swore Walsh to the paper. Walsh held up his hand and swore to it after he had read it over to him. Walsh did not say anything and after he had sworn to it, the notary attached his seal and signed his name; heard no other conversation and had no other conversation. When the notary went in and understood what was to be done, as he testified, he asked Walsh where the certificate was and he said he didn't have it; that was all he said about it, except that witness thought he said that his wife had it; had no recollection of Walsh saying anything about why he did not have it or why he did not get it from his wife. Asked by the court why he had put in the words "certificate withheld," he answered that was because Walsh didn't have it in his possession.

To repeat, Patrick Walsh died on the night of the 5th of December. On the 7th, Mr. Schulenburg received a letter from the sovereign clerk of the defendant order, of date December 5, 1907, addressed to him at St. Louis, as follows:

"I return you herewith the statement of P. W. Walsh for duplicate certificate. It is necessary that same be filled out on the official blank of the order, a copy of which is herewith enclosed. This blank should be signed, attested and sworn to and forwarded to this office when the duplicate certificate will be promptly issued.

"Fraternally,
"J. T. YATES, Sovereign Clerk."

This letter was received by Schulenburg December 7, 1907, it being stipulated by counsel at the trial that a letter, properly stamped, deposited in the St. Louis mails, at the city of St. Louis, addressed to the sovereign clerk of the order, at Omaha, Nebraska, would reach its destination within tweny-four hours thereafter.

After the death of Patrick Walsh, the plaintiff, his wife, brought suit against the order to recover the two thousand dollars, claiming it as the beneficiary named in the certificate. The Sovereign Camp appeared and pleaded that the St. Louis Union Trust Company had been appointed curator of the three minor children of Patrick Walsh and claimed the fund by virtue of the paper before set out and depositing the fund in court, asked that the plaintiff and the St. Louis Union Trust Company, as curator, be required to interplead. They accordingly did so, each party claiming it, the widow, Mrs. Walsh by virtue of her name being in the certificate, and the curator by virtue of the paper before referred to, changing the beneficiaries, it also being averred by Mrs. Walsh that at the time of the execution of the paper her husband was not of sound mind. At the trial before the court there was evidence as above. Mrs. Walsh also introduced evidence tending to show that she had paid the money necessary to discharge the bill to the hospital for his treatment there and that to do so she had mortgaged some property which she owned.

The rules of the order were introduced in evidence, those parts of the constitution and by-laws of the order relied upon by plaintiff being the section which provided that one of the objects of the order was to create a fund from which, upon reasonable and satisfactory proof of the death of a member, who has complied with all of the requirements of the order, there should be paid a sum not to exceed three thousand dollars to the person or persons named in the certificate as beneficiary or beneficiaries and that the name or names of the beneficiary or beneficiaries shall be written in every beneficiary cer-

tificate issued; another section providing that if a member desires to change his beneficiary he might do so upon the payment to the sovereign camp of a fee of twenty-five cents, which sum together with his certificate must be forwarded to the sovereign camp with his request written upon the back of the certificate, giving the name or names of such new beneficiary or beneficiaries and is as follows:

"And that, upon receipt thereof, the sovereign clerk should issue and return a new certificate, subject to the same conditions and rights as the one surrendered, which conditions should be a part of the new certificate, in which he must write the name or names of the new beneficiary or beneficiaries and record the change in the proper books of the sovereign camp; that, in the event of the beneficiary certificate being withheld from the member desiring to make the change, before such change shall be made, the member to furnish the sovereign clerk satisfactory proof, under oath, of the facts and circumstances of the withholding of such certificate from his possession, and waiving for himself, or beneficiary or beneficiaries, all rights thereunder, whereupon upon the payment of twenty-five cents, the sovereign clerk, if such proof shall be satisfactory to him, should issue to such member a new certificate in lieu of the old one, with the desired change of beneficiary; another section providing that a member could not hold more than one beneficiary certificate at the same time; another providing that no officer, employee or agent of the sovereign camp, or of any camp, had the power, right or authority to waive any condition upon which beneficiary certificates were issued, or to change, vary or waive the provisions of the constitutional laws, and that each and every beneficiary certificate is issued upon the conditions stated in and subject to the constitution and laws then in force or thereafter enacted; and another section providing that, after proof of death had been approved by the proper officer and the sovereign camp, a warrant should be

drawn for the amount named in the certificate, 'payable to the beneficiary or beneficiaries named therein, or their legal representatives.' "

There was evidence in the case to the effect that plaintiff and his wife had lived together happily; that he had always been a mild mannered man, kind and gentle, until after his first return from the hospital, when, according to plaintiff and her witnesses, he began to have hallucinations and was, for two or three days before being taken to the city hospital, delirious part of the time, believing that the physicians at his home were not treating him properly. In contradiction of this there was testimony from a number of witnesses that while he was sick and feeble in body, his mind was sound. This was practically all the evidence in the case.

At the conclusion of the trial, which was before the court as chancellor, and on the interpleas, the court entered up a finding and decree in favor of the St. Louis Union Trust Company, and adjudged the entire fund, which had been paid into court by the sovereign camp, to the St. Louis Union Trust Company as curator, the original defendant, sovereign camp, Woodmen of the World, having previously been discharged from the case on depositing the fund with the court. Within due time the plaintiff, Mrs. Walsh, filed her motion for a new trial which was overruled, exception saved and the case brought to this court.

REYNOLDS, P. J. (after stating the facts).—The conclusion of the learned trial judge on the issue of soundness of mind of Patrick Walsh being supported by ample testimony in the case will not be disturbed by us. He had the witnesses before him, heard them testify, was able to determine the weight to be given to their testimony, especially in case of conflict as there was here, and while we are not bound by his finding, that finding on the facts is always very persuasive and will

ordinarily be followed by us. The issue of soundness of mind, we, therefore, hold is concluded by the finding of the learned trial judge, it being supported by substantial evidence. As to the law of the case as applicable to the facts here, it is unnecessary for us to enter into an elaborate discussion of it. By the interpleader and issues framed, this case was converted into a suit in equity and is to be determined on the principles applied by courts of equity to cases of this character. One of the fundamental and time-honored doctrines of equity is that a court of equity will apply to the transactions its well-known maxim that equity looks to the intention of parties to contracts rather than to the form in which that contract is evidenced, and if the intention is clearly manifest or can be ascertained with reasonable certainty, a court of equity will carry it out, although the form of its expression may be defective, either in non-compliance with some specific rules or even conditions of the law itself. Applying that to the facts of the case at bar, we think that its determination rests on the principle announced in National American Assn. v. Kirgin, 28 Mo. App. 80, l. c. 82; Hofman v. Grand Lodge B. L. F., 73 Mo. App. 47, l. c. 53; St. Louis Police Relief Assn. v. Strode, 103 Mo. App. 694, 77 S. W. 1091; Grand Lodge A. O. U. W. v. O'Malley, 114 Mo. App. 191, l. c. 205, 89 S. W. 68; St. Louis Police Relief Assn. v. Tierney, 116 Mo. App. 447, 91 S. W. 968; and Grand Lodge A. O. U. W. v. McFadden et al., 213 Mo. 269, 111 S. W. 1172, the latter being a decision by our Supreme Court on a certification to that court by this court of the case referred to above under the title of Grand Lodge A. O. U. W. v. O'Malley, and in which the decision of this court, said to be in conflict with one by the Kansas City Court of Appeals, was approved in an elaborate opinion by Judge WOODSON. Judge WOODSON, speaking for Division No. 1 of the Supreme Court, has so conclusively settled the law as applicable to the facts such as are presented in this case, and settled them against the contention of the

appellant here, that we do not think it necessary to go into any elaborate exposition of it. We hold that while the form in which the change of beneficiaries in the case at bar is not strictly in accordance with the rules of the order, it is substantially as required. All the objection the order made to it was to its form; so far as the order is concerned, it does not now stand on that, but declares its willingness to pay the fund to whomsoever the court shall find is entitled to it. But the failure of the order to insist on the form cannot and does not bind parties claiming under the rules of the order. They have a right to insist and claim as is here done that the change was not made as provided by those rules, which are a part of the contract. The intention of the member to make the change and the change he intended are very clearly set out. That death intervened before he could conform to the rules and express that intention formally should not and will not prevent a court of equity from enforcing that intent and making it effective, the member having done all that was within his power to carry out his intention. He did not have the certificate on which the form of change of beneficiary was printed; nor did the secretary of his camp have one. Whether the policy was withheld by his wife is not material. Walsh did not have it with him at the hospital. It was not in his possession. So he did all he could do under the circumstances.

The judgment of the circuit court is affirmed. All concur.