48 P.(2d) 1024

**MUTUAL LIFE INS. CO. OF NEW YORK**

**v. OWENS et al.**

No. 4061.

Supreme Court of New Mexico.

Sept. 18, 1935.

Bryan G. Johnson, of Albuquerque, for appellant.

John F. Simms and Augustus T. Seymour, both of Albuquerque, for appellee.

BICKLEY, Justice.

The Mutual Life Insurance Company of New York filed its bill of interpleader, setting up that Hubert E. Owens at the time of his death had an insurance policy with it. The company acknowledged that the sum called for in the policy was due to the beneficiary, and averred its willingness to pay the proceeds of the policy to the party entitled thereto. The bill alleged that Fay E. Owens (appellee), wife of the insured, was designated as beneficiary on the face of the policy, and that Martha-louise Horton Owens (appellant), former

wife of the insured, was holding a request for change of beneficiary, signed by insured and dated March 1, 1934, requesting the company to change the beneficiary to her.

The bill set up that by reason of conflicting claims the company was in great doubt as to which claimant it ought to pay the proceeds of the policy, and that it had paid the money into court, and prayed that the claimants be required to interplead and "settle between them their rights to the money under the policy."

Fay E. Owens, appellee, filed her answer and cross-complaint setting up her claim to the proceeds of the policy as the beneficiary designated on the face thereof.

Marthalouise Horton Owens, appellant, filed her answer and cross-complaint setting up her claim to the proceeds of the policy by reason of a request for change of beneficiary signed by the insured and delivered to the company the day prior to the death of the insured, which written request designated appellant as beneficiary.

At the conclusion of the case the court found that appellee Fay E. Owens, who is designated as beneficiary on the face of the policy, was entitled to the proceeds of said policy, and entered judgment accordingly. From this judgment the appellant has appealed.

The following findings of fact made by the court show the basis of the judgment, and, since we find them controlling here, will be set out in full:

"1. Hubert E. Owens, the husband of Fay E. Owens, died a few minutes after twelve o'clock noon on the 2d day of March, 1934, leaving him surviving Fay E. Owens, his widow, who is twenty (20) years of age."

"3. Hubert E. Owens in March, 1926, was married to Marthalouise Horton; on the 15th day of May, 1926, he took out the policy of insurance in question, designating his then wife, Marthalouise H. Owens, as the beneficiary; on the 11th day of January, 1934, Hubert E. Owens and Marthalouise H. Owens, his wife, entered into a written property settlement by the terms of which each renounced any interest or claim in the insurance on the life of the other; on the 12th of January, 1934, Marthalouise Horton Owens obtained a divorce from Hubert E. Owens in the district court of Bernalillo county, New Mexico, and there being no children of their marriage and no alimony, suit or support money claimed or adjudged from and after the 12th day of January, 1934, Marthalouise Horton Owens, who resumed her maiden name, Marthalouise Horton, had no legal claim of any kind against the said Hubert E. Owens, nor was he indebted to her in any sum or on any account whatsoever.

"4. On the 15th day of January, 1934, Hubert E. Owens, then a single man,

signed and swore to an application to the insurance company to change the beneficiary of the policy to his mother, Bonnie Owens, and delivered the policy to the Albuquerque office of the insurance company, which forwarded the policy and the application for change through the Pueblo office to the home office in New York, where, on the 22d of January, 1934, the company consented to the change and indorsed the same on the policy and returned it by mail through the Albuquerque office to the insured; on the 4th day of February, 1934, Hubert E. Owens married Fay E. Owens, and on the 19th of February, 1934, Hubert E. Owens executed and swore to a written application to the insurance company to change the beneficiary of the policy to Fay E. Owens, his wife, and delivered the policy with the application to the Albuquerque office of the company, which forwarded the same through Pueblo to the home office in New York, where on the 25th of February, 1934, the insurance company consented to the change and indorsed the same on the policy and returned the same by mail through Pueblo to the Albuquerque office where the policy arrived on the 28th of February, 1934, and on that day Martha-louise Horton, the divorced wife of Hubert E. Owens, who was and had been for several years cashier in the local office of the insurance company in Albuquerque, mailed the policy to Hubert E. Owens at his home address.

"5. The policy was delivered in the mail box at the home of Hubert E. Owens before noon on March 1, 1934, and was received by his wife, Fay E. Owens; Hubert E. Owens worked at the Santa Fé shops and did not come home for lunch; that night, when Hubert E. Owens arrived at home, his wife handed him the letter in which the policy was enclosed, he read the letter, looked at the policy and handed the policy to his wife with instructions to put it away, and she placed it in the chiffonier drawer in his room where it remained accessible to him that night and the following morning, but he made no effort to take it or carry it with him on the morning of March 2d, nor did he say anything to his wife to indicate that he contemplated making any further change in the beneficiary thereof, and before noon on March 2d, he was stricken with edema and died at the hospital a few minutes after twelve o'clock that day.

"6. After his marriage to Fay E. Owens on the 4th of February, 1934, the deceased, Hubert E. Owens, and Fay E. Owens had no discord or trouble in their relations as husband and wife.

"7. Hubert E. Owens, by reason of having made the previous application for change of beneficiary on his policy on the 15th of January, 1934, when, as a single man, he changed it to his mother, and on the 19th of February, 1934, after his marriage, when he changed it to his wife, un-

derstood that the company required all applications for change of beneficiary to be accompanied by the policy, which was required to be sent to the home office in New York to have the change of beneficiary endorsed thereon.

"8. On the 1st day of March, 1934, at about nine o'clock a. m., Hubert E. Owens met his former wife, Marthalouise Horton, at the corner of Third and Central in Albuquerque and gave to her a signed application which she had previously prepared and given to him requesting the company to change the beneficiary from his wife, Fay E. Owens, to Marthalouise Horton, his divorced wife, and, at the same time told her that, when the policy got back from the home office to hold it in the local office where she was cashier, and she told him the policy had arrived changed to his wife, Fay E. Owens, the day before, and had been mailed out in the afternoon mail, and that when he went home the night of March 1st, it would be there, and that he was required to bring the policy down to the office so it could be sent back to the home office in New York with the proposed change of beneficiary to the divorced wife; Hubert E. Owens did not swear to the application before a notary, and Marthalouise Horton kept the application but never received the policy; on the 7th of March, 1934, the attorney for Marthalouise Horton mailed in the unsworn application to the Pueblo district office of the company, together with proof of claim and demanded that the company pay the proceeds of the policy to her.

"9. The insurance company received at its home office in New York the unsworn application dated March 1, 1934, for change to Marthalouise Horton, the divorced wife, about ten days after the death of Hubert E. Owens, and the company refused to indorse the change on the policy, taking the position that it was without power to do so after the death of Hubert E. Owens, and, thereafter, the insurance company filed the bill of interpleader in this cause.

"10. That, during the time he was married to Marthalouise Horton for almost eight years, Hubert E. Owens underwent a period of ill health due to some nervous disorder, and he had no other insurance on his life than the policy here in question.

"11. That any intentions which Hubert E. Owens may have had to change the beneficiary of the policy to his divorced wife, pursuant to which he gave her on March 1st, 1934, the unsworn application for change which she had previously prepared in the local office of the company and furnished to him, was by him abandoned before his death, and although he had opportunity to have taken the policy on the morning of the 2d of March, 1934, and to have delivered it to Marthalouise Horton at the local office of the company in Albuquerque, he did not do so, but on

the night of March 1st, after reading the letter of transmissal and examining the policy which had just been changed so as to be payable to his wife, he did not attempt to keep the policy in his possession, but turned it over to his wife and told her to put it away, and she placed it in his chiffonier drawer from which he did not attempt to take it that night or the next morning, nor did he mention to his wife anything about the proposed change to his former wife, and, at the time of his death, the said Hubert E. Owens did not intend to deprive his wife, now his widow, of said insurance.

"12. That the plaintiff, Mutual Life Insurance Company of New York, is a corporation organized under the laws of New York upon the mutual plan, and the policy here in question was written at the home office of the insurance company in New York, and all changes of beneficiary thereunder are required by the terms of the policy to be made at the home office in New York accompanied by the policy for indorsement, and such changes of beneficiary take effect upon indorsement of the policy by the company at its home office in New York.

"That Hubert E. Owens subsequent to his marriage to Fay E. Owens, had asked the defendant, Marthalouise Horton, to remarry him and stated that he would obtain a divorce from Fay E. Owens.'

"That Hubert E. Owens after his marriage to Fay E. Owens stated to the defendant, Marthalouise Horton, that his married life was unhappy.

"At or about 9 o'clock on March 1, 1934, Hubert E. Owens delivered to Marthalouise Horton a signed request for change of beneficiary of his insurance from his wife, Fay E. Owens, to his former wife, Marthalouise Horton, which request was on the form provided by the insurance company.

"After the insured, Hubert E. Owens, received the insurance policy on the evening of March 1, 1934, said insurance policy remained subject to his control and his ability to obtain physical possession of it and deliver it to the Albuquerque office of the insurance company."

The following unchallenged statement in appellee's brief indicates the proposition of law involved and the attitude of the trial court with reference thereto:

"The question of law before the court in this case is whether or not, under the undisputed facts, insured had effected a change of beneficiary of the policy in question in favor of appellant; the Trial Court found that the beneficiary of said policy had not been changed from the appellee to the appellant.

"The provision of the policy controlling the power of insured to change the beneficiary, to be found at page 21 of the

Transcript of Record, is as follows: 'Change of Beneficiary.—Unless otherwise provided by endorsement on this policy or unless there be an existing assignment of this policy other than to the Company, the Insured may, from time to time, while the policy is in force, change the beneficiary by filing written notice at the Home Office of the Company accompanied by the policy for endorsement. Such change shall take effect upon endorsement of the policy by the Company.'

"The trial court favored the appellant's view of the law to the effect that a change of beneficiary can be accomplished without a strict or complete compliance with the conditions of the policy regarding the endorsement of the insurer, and accepted as the controlling rule in the case the doctrine set forth in Hoskins v. Hoskins, 231 Ky. 5, 20 S.W.(2d) 1029, from which appellant quotes at length in her brief. Nevertheless, the trial court gave judgment for the appellee on the facts."

Appellant cites a number of cases and refers to the annotation in 78 A. L. R. 970, entitled "Failure to obtain insurer's formal consent or indorsement in the manner prescribed as affecting attempt to change beneficiary in old line insurance policy where request or demand for change has been made upon insurer."

The view is frequently expressed that a provision requiring a return of the policy to the insurer and the indorsement thereon of the change of beneficiary is intended only for the benefit of the insurer, and may be waived by it, and where all that remains to be done are merely ministerial acts of the officers and agents of the insurer, the change will take effect though the formal details were not completed before the death of the insured.

Whether the provision of the policy heretofore quoted requiring that the written notice by the insured of change of beneficiary must be "accompanied by the policy" is essential may depend upon circumstances. Where the failure to send in the policy is due to inadvertence or because the insured does not have power or control over it, it appears from the judicial expressions cited by appellant that such failure will not defeat the change of beneficiary.

Appellee challenges the view of the law presented by appellant as being inapplicable to the policy in question and the facts involved.

We need not take the time to investigate and discuss this divergence of view. ▇ It appears that the equitable principle controlling in cases of this sort is that equity will regard as done that which ought to be done, and that the intention of the parties should be carried out.

It is asserted by appellee, and not challenged, that in every case cited by appellant the court decreed that the change of

beneficiary had been effectuated in accordance with the intention of the insured, and the rules of equity were invoked to keep the unavoidable failure of the insured to comply with the technical requirements for such a change from preventing the insured from giving the proceeds of the policy to the very person he intended should receive it. Also, it seems that the cases and texts cited by appellant in support of her theory of the law state that the basis for equitable action in such cases is that the insured shall have done everything in his power to complete the steps required by the policy contract for the purpose of making such change.

We think the following statements from the texts are favorable to appellant's contentions as to the law:

"It may, however, be safely said to be a well established proposition of law that where an insured, in attempting to change the beneficiary in his certificate or policy, has done everything in his power to conform to prescribed conditions and formalities, but dies before completion thereof, the desired change will be deemed effected so as to cut off the contingent rights of the deposed beneficiary, especially if all that remains to be done is some purely ministerial duty on the part of the officers or agents of the insurer." Cyclopedia of Insurance Law, Couch, vol. 2, p. 907.

"On the principle that equity regards as done that which ought to be done, the Courts will give effect to the intention of insured by holding that the change of beneficiary has been accomplished where he has done all that he could to comply with the provisions of the policy * * *." 37 C. J. 585.

Assuming, but not deciding, that the law is as claimed by appellant and should be applied to the policy contract in question, it appears that she, nevertheless, lost her case on the facts.

The trial court found as a fact that though the insured had an opportunity to deliver the policy to the local office of the company on the morning of the 2d of March, 1934, he did not do so. Appellant, realizing the importance of this circumstance, requested the trial court to make findings as follows:

"The insured, Hubert E. Owens, had no opportunity on the morning of March 2, 1934 to deliver the insurance policy to the Albuquerque office of the insurance company before he was fatally stricken unless he had absented himself from his duties with the Santa Fé Railroad where he was employed.

"That unless the insured, Hubert E. Owens, obtained permission of his employer, the Santa Fé Railroad, to leave his duties or unless he absented himself from such duties without the consent of his employer, the said Hubert E. Owens, on March 2, 1934, had no opportunity to de-

liver the insurance policy to the Albuquerque office of the insurance company before noon of March 2, 1934."

These requests the court refused.

From the facts the trial court drew the conclusions or inferences that the insured did not do everything in his power to complete the steps required by the policy contract for a change of beneficiary, and that the intention insured had apparently formed on March 1, 1934, or prior thereto, of making a change in the beneficiary, was never effectively carried out, but on the other hand was abandoned by the insurer.

Appellant claims that since there is no conflict in the evidence upon which the findings of fact are based, this court is as well circumstanced to properly make the ultimate deductions from such undisputed evidence as was the trial court, as to whether the insured changed his mind after having delivered to the local official of the company the written request for change of beneficiary.

We have studiously considered the whole record, and we think the ultimate fact or conclusion arrived at by the trial court is supported by the findings, and that the specific findings of fact are warranted by the evidence.

Whether required to do so or not, we have taken appellant at her word, and assumed the liberty of examining the specific findings and the evidence upon which they are based, and we cannot draw any deductions therefrom which stand the test of reason any better, or as well, as the ones drawn by the trial court.

Finding no error in the record, the judgment is affirmed, and it is so ordered.

SADLER, C. J., and HUDSPETH and ZINN, JJ., concur.

BRICE, J., did not participate.