**UNITED BENEFIT LIFE INS. CO. v. ELLIOTT et al.**

No. 5654–A.

District Court of Alaska.  First Division.  Juneau

Jan. 16; 1948.

Faulkner & Banfield, of Juneau, for plaintiff.
Simon Hellenthal, of Juneau, for defendant Elliot.
R. E. Robertson, of Juneau, for defendant Rhodes.

FOLTA, District Judge.

Interpleader against Kittie Marie Elliott and Wilma Rhodes to determine which of them is entitled to the proceeds of an insurance policy issued on the life of John Russell Elliott.

Kittie Marie Elliott, the beneficiary last designated in the policy, was the wife of the insured until they were divorced November 1, 1946. On the same day he and the defendant Wilma Rhodes applied for a marriage license, which was issued three or four days later, and also wrote a letter to the insurer, transmitting the premium then due and requesting that the beneficiary be changed to Wilma Rhodes, whose name was set forth in the request as Wilma Elliott in anticipation of marriage. On November 7, 1946, the insurer acknowledged receipt of this letter and stated that the change would be made upon the receipt of a formal request, a blank for which was enclosed, accompanied by the policy. On or about November 6th the insured left Juneau on a hunting trip from which he never returned, having

perished November 11th. The proceeds of the policy, which were deposited in the registry of the court with the filing of the interpleader suit, are claimed by Kittie Marie Elliott as the beneficiary last designated in the policy, and by Wilma Rhodes who asserts that she is entitled as a substituted beneficiary. The insurer stands indifferent as between the claimants.

The right to change the beneficiary, expressly reserved by the insurer, was subject to the following provision of the policy, defendant Elliott's exhibit A:

"Change of Beneficiary—If the right to change the Beneficiary has been reserved, the Insured may with the consent of the Company, at any time while this policy is in force, change the Beneficiary or Beneficiaries under this policy by written notice to the Company at its Home Office. Such change shall be subject to the rights of any previous assignee and shall become effective only when a provision to that effect is endorsed on or attached to this policy by the Company, whereupon all rights of the former Beneficiary or Beneficiaries shall cease."

■ To the general rule that no change in beneficiary may be effected except upon a compliance with the provisions of the contract of insurance, there are certain well-recognized exceptions, one of which is that where the insured has done all in his power to change the beneficiary, or in other words has substantially complied with the requirements, a court of equity will regard that as done which ought to be done and give effect to the intention of the insured. Supreme Conclave, Royal Adelphia v. Cappella, C.C., 41 F. 1, 4, 5; 29 Am.Jur. 985, 987, secs. 1315, 1317; 46 C.J.S., Insurance, § 1175.

■ The question, therefore, is whether under the circumstances the insured has substantially complied with the requirements in attempting to effect a change of beneficiary. On this question the burden of proof is on the defendant Rhodes. The defendant Elliott contends that, since the policy did not accompany the request for a change of bene-

ficiary nor was surrendered for endorsement, there was not a sufficient compliance. The defendant Rhodes seeks to avoid the effect of this omission by contending that the policy was in the possession of defendant Elliott who refused to surrender it and that, therefore, the omission is excusable. Whether the insured or the defendant Elliott had possession of the policy was deemed to be the pivotal question in the case, and much of the testimony was directed principally to this issue.

Defendant Rhodes testified that on November 1, at her home, the insured, in connection with writing the letter, defendant Rhodes' exhibit 4, requesting a change of beneficiary, said that the defendant Elliott had the policy and would not surrender it to him. Upon objection by defendant Elliott to the admissibility of this declaration, the Court reserved ruling. The Court is now of the opinion that, since the declaration was made as a part of the act of requesting a change of beneficiary and since it may be presumed that the insured knew of the requirement as to the surrender of the policy from having once before changed the beneficiary under this policy, the declaration was admissible as part of the res gestae. Harrison v. United States, 6 Cir., 200 F. 662; Calderon v. O'Donahue, C.C., 47 F. 39.

The probative force of this statement, however, would appear to be weakened by the circumstance that the witness Irene Benson, who testified on behalf of defendant Rhodes and who was present on that occasion, was not asked and did not testify concerning this declaration. Moreover, defendant Elliott testified that she never saw the policy until it was handed to her by the administrator of the insured's estate, who was appointed December 1, 1946, and Dolloff, uncle of the insured, who was a witness for defendant Elliott, testified that he discovered the policy and another one among the insured's papers in a drawer of a safe in the witness Goldstein's store where the insured kept papers described as "statements", "bills", "boat papers", and "papers." Their credibility is sharply attacked by defendant

Rhodes, however, because of certain inconsistencies and contradictions and the undenied hostility of Dolloff. Defendant Rhodes insists that the statement of defendant Elliott that she never saw the policy involved until it was given to her by the administrator, when viewed against her admission that she found two policies among the insured's papers at her home and the admission of Dolloff that he did not call Goldstein's attention to the fact that he had found the policy among the papers of the insured in Goldstein's safe, is unworthy of belief. Likewise, Dolloff's credibility is attacked because of obvious contradictions in his testimony and his hostility.

From the foregoing it is clear that the statement of the defendant Rhodes, that insured told her the defendant Elliott had the policy and would not surrender it, is denied by the defendant Elliott, who was corroborated by the witness Dolloff. Since Dolloff and Irene Benson testified by deposition, the Court had no opportunity to observe their demeanor or to question them for the purpose of testing their credibility or weighing their testimony, and since much of the testimony was taken by deposition, it is not surprising that many questions are left unanswered. For example, it was not shown by whose authority Dolloff obtained possession of the insured's papers from Goldstein, although it may be presumed that he was acting for the administrator, nor that he was aware of the importance of the facts relating to the presence of the policy. Moreover, the testimony of Goldstein, that he did not see the policy or the envelope in which it was contained at the time Dolloff testified he found it among insured's papers which were handed him by Goldstein, is without any significance in the absence of evidence that Goldstein was near by and watching Dolloff, as he sorted the papers, so closely that he would in all probability have noticed the envelope containing the policy had Dolloff found it. Assuming that Dolloff was instructed by the administrator to examine insured's papers in Goldstein's safe for the purpose of ascertaining if the policy was among them, this would not justify the inference

that Dolloff knew how important the fact of possession was and, unless he did, it is unlikely that upon finding the policy he would have called Goldstein's attention to it, particularly if Goldstein was occupied with his ordinary duties about the store. Likewise, although defendant Elliott testified that shortly after the divorce the insured, accompanied by a friend, came to her house and took his papers, she was not questioned as to the identity of the friend or in regard to the character of the papers taken.

In these circumstances the Court cannot hold that the defendant Rhodes has proved by a preponderance of the evidence that the policy was in the possession of the defendant Elliott so as to entitle her to the benefit of the presumption that a demand therefor would have been futile. The question, as thus narrowed down, is whether the facts in the instant case are such as to appeal to the conscience of a court of equity sufficiently to justify applying the doctrine that equity regards that as done which ought to be done. While the decided weight of authority is to the effect that the transmittal of a written request for a change of beneficiary, accompanied by the policy, is sufficient to satisfy the requirements of the rule of substantial compliance; 29 Am. Jur. 985, 987, secs. 1315, 1317; 46 C.J.S., Insurance, § 1175; there is a conflict in the decisions as to the application of the rule to cases in which the policy provision was identical or substantially so with that in the case at bar, and where the policy was neither transmitted nor delivered to the insurer before the death of the insured. In Equitable Life Assurance Society of United States v. Hitchcock, 270 Mich. 72, 258 N.W. 214, 106 A.L.R. 591, where the administrator and minor heirs were required to interplead, the execution of a form for a change of beneficiary which was not received by the insurer until after the insured had committed suicide was held to be a sufficient compliance. In Bell v. Criviansky, 98 Mont. 109, 37 P.2d 673, where the proceeds of the policy were claimed by the children as substituted beneficiaries and by the widow as the beneficiary

last designated in the policy, the insured wrote the insurer for a blank so that he could effect a change of beneficiary. Upon receipt of a reply from the insurer, enclosing a blank form for execution and directing its return together with the policy, the insured, who was then in the hospital, told his son he would attend to it after his discharge, but died two days later. This was held to be a substantial compliance. In Arrington v. Grand Lodge, 5 Cir., 21 F.2d 914, the execution by insured, who died six or seven hours later, of a certificate addressed to his wife, stating his desire to change the beneficiary from his sister to her, was held to be sufficient. In Northern Life Insurance Co. v. Burkholder, 131 Or. 537, 283 P. 739, the endorsement by insured of the name of his fiancee on the policy without more was held sufficient. In Taylor v. Grand Lodge, 45 N.D. 468, 178 N.W. 130, the insured executed a blank form of request for a change of beneficiary on the back of his certificate and had it witnessed, but died the next day. A rule of the Lodge required attestation by the recorder of the Lodge, under his seal, or, if that were impossible, by a civil officer, having a seal, under his seal, and delivery of the certificate to the recorder with a fee of fifty cents. The recorder was then required to transmit them to the grand recorder who would record the change and issue a new certificate. Although courts have had occasion to frequently point out that under a certificate of a beneficial association or fraternal order the member has only a power of appointment and is accordingly restricted in the designation of beneficiaries, nevertheless, the step taken by the member in the foregoing case was held to be a substantial compliance. Likewise, in Skamoricus v. Konagiskie, 318 Pa. 128, 177 A. 809, there was also held to have been a sufficient compliance where the insured went to the Reading office of the insured and executed a form for a change of beneficiary, whereupon he was given the form and instructed to return it with his policy, but before he could do so he was injured and died.

The same result was reached in Frakes v. Brotherhood, Mo.App., 204 S.W. 26; Pikeville National Bank & Trust

Co. v. Shirley, 281 Ky. 158, 135 S.W.2d 431; Greenfield v. Massachusetts Mutual Life Ins. Co., 253 App.Div. 51, 1 N.Y.S.2d 52; In re Sanes' Estate, 91 Pa.Super. 466, referred to in the annotation in 78 A.L.R. 986, 987; Walsh v. Sovereign Camp, 148 Mo.App. 179, 127 S.W. 645; cf., Sun Life Assur. Co. of Canada v. Sutter, 1 Wash.2d 285, 95 P.2d 1014, 125 A.L.R. 1089.

The defendant Elliott has cited one case, that of Johnson v. Johnson, 5 Cir., 139 F.2d 930, 151 A.L.R. 268, but an examination thereof discloses that the decision turned on the circumstance that a request for a change of beneficiary was not received by the insurer until thirteen days after insured's death. However, an exhaustive search reveals the following decisions in favor of defendant Elliott. Shoemaker v. Sun Life Ins. Co., 101 Pa.Super. 278, referred to in the annotation in 78 A.L.R. 987; Ancient Order of Gleaners v. Bury, 165 Mich. 1, 130 N.W. 191, 34 L.R.A.,N.S., 277; Henderson v. Adams, 308 Mass. 333, 32 N.E.2d 295; Mutual Life Ins. Co. of New York v. Owens, 39 N.M. 421, 48 P.2d 1024; Wilkie v. Philadelphia Life Ins. Co., 187 S.C. 382, 197 S.E. 375; Herrod v. Kimbrough, 83 Pa.Super. 238, referred to in the annotation in 78 A.L.R. 984; and Clark v. Metropolitan Life Ins. Co., 126 Me. 7, 135 A. 357, where the Court said, by way of dictum in commenting on facts identical with those in the case at bar, that even if it were an equitable action the intent of the insured could not be given effect because he had not done all in his power to effect a change of beneficiary.

While the question is not free from doubt, the weight of authority would seem to support the view that the failure to transmit or deliver the policy to the insurer with a written request for a change of beneficiary does not preclude the application of the rule of substantial compliance, even though the policy was available or could have been obtained upon demand, where it appears that the in-

sured did everything that it was reasonably possible for him to do before death.

It must be conceded, of course, that it may be argued with plausibility and much force that where the insured has failed to transmit the policy to the insurer with the request for a change of beneficiary he has not done every thing possible to effect the change. But where the insured does not know where the policy is or dies before the receipt of the insurer's blank and instructions for its execution and return with the policy, no reason is perceived why a court of equity should order the proceeds of the policy disposed of in a manner directly contrary to the clearly expressed wishes of the insured.

█ Not only do the facts in the instant case bring it within the rule of substantial compliance, but where, as here, the insurer stands indifferent as between the parties, the clear intent of the insured to make his fiancee the beneficiary is entitled to much weight. The comments of the court in Northern Life Ins. Co. v. Burkholder, supra [131 Or. 537, 283 P. 744], are particularly pertinent. There it was said that, "It is true that he (insured) did not follow the technical method prescribed by the policy, but this method was for the benefit or convenience of the company and, so far as this old line insurance company was concerned, the endorsement upon the policy by the president or secretary would have been a purely ministerial act, which they could not legally have refused, and which requirement the company waived as heretofore shown." What was said there could be said, mutatis mutandis, in the case at bar.

Accordingly the Court finds that the insured did all that it was reasonably possible for him to do under the circumstances to effect a change of beneficiary, and that the defendant Rhodes is entitled to the proceeds of the policy.

██ The remaining question is whether the plaintiff is entitled to attorney fees. Neither sec. 3390, C.L.A.1933, governing interpleader suits, nor sec. 4067, C.L.A.1933, re-

476

lating to costs in equitable actions, contains any authority for the allowance of such fees. The subsequent amendment of sec. 4065, C.L.A.1933, authorizing the allowance of attorney fees in the classes of cases enumerated in sec. 4062, neither enlarged the classes nor affected sec. 4067. The situation is not unlike that which confronted the Supreme Court of California in Los Angeles Trust & Savings Bank v. Ward, 197 Cal. 103, 239 P. 847, and in which it was held that the allowance of attorney fees in interpleader suits was improper, and hence I am constrained to hold that while a court of equity may award plaintiff its costs from the fund deposited in court, it has no discretionary authority to allow attorney fees. This would be so even had it been necessary, for some reason, to proceed under the federal interpleader act, 28 U.S.C.A. § 41, subd. 26, for the local statute as to costs would still govern. Cf., Summers v. United States, 231 U.S. 92, 34 S.Ct. 38, 4 Alaska Fed. 143, 58 L.Ed. 137. Accordingly plaintiff is allowed its costs but not attorney fees.

Findings of fact and judgment may be prepared in accordance herewith.